make a motion to move the admission of my law clerk, Dimitri Karshtedt. He's a member of the bar in good standing with the highest court of California. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. Dimitri has clerked with me for more than a year and will be with me for about a little longer than 18 months when he leaves. He's a remarkable young man coming from Russia at the age of 13 and excelling at everything he's ever done here. He serves the court and me with great distinction, always helpful, incredibly thorough, and I have no doubt that he'll be a valuable member of our bar. And so I move, make the motion, and I'll let my colleagues decide. You recuse on the vote? I do, I recuse if we need to deliberate. I'm delighted to support the motion wholeheartedly. My only reservation is that the applicant, as I understand it, is returning to California, which means that we won't be able to see as much of him as we have on an everyday basis, but I don't believe that that goes to the merits of his application. And so I'm delighted to vote in favor. I will make it a majority and we have a unanimous vote. Okay. Now, Mr. Raffleson, is that your name right? Yes, Your Honor. You may proceed. May it please the court, because it's determinative of the issues on the floor. I'd like to focus my argument today on the proper construction of the term structured arc sheet. The structured arc sheets in the 932 patent can be used in liquid crystal display products such as monitors and televisions. The 932 patent describes using a structured arc sheet to alter the pathway of light from discrete light sources to make that light appear more uniform to a viewer. The commission erred in construing the term structured arc sheet as a sheet constructed in the shape of an arc. It reads construction, which includes language adapted from the specification, more closely aligns with the intrinsic evidence and evidence of how one of ordinary scholarly art would understand the term. It reads construction as a sheet containing an arc-like structure for altering the pathway of illuminating light in multiple directions. I'd like to focus... I don't understand why you think that it's necessary to add an additional functional limitation to the claim when there already is a functional limitation written into the words of the claim. Well under this court's precedent, claim terms are to be construed through the eyes of one of ordinary skill in the art. And the record shows that the only persons of ordinary skill in the art to testify at the hearing in this case, ITRI's expert Dr. Solzars and LG's expert Dr. Ascuti, both agree that the function of the claimed arc sheet or the way in which they work is to alter the pathway of illuminating light in multiple directions. That's how the invention works. Well the fact that that might be true, that it works that way, doesn't mean that the phrasing has to be construed as to require that limitation, does it? Well, two things on that, Your Honor. First of all, one has to look at the... one has to look at how one of ordinary skill in the art would view the... or understand the claim term. And here we have clear evidence of that. The other thing is that really this is central to the way the invention works. The point is that whenever you start with discrete light sources, if you don't alter their pathway, then you're not going to make it... you're not going to make the illuminating light uniform. I don't understand. I have to say I'm puzzled by the same thing that Judge O'Malley appears to be puzzled by. It seems to me that if we do what you're asking us to do, we would then read the specifications disclosure of the function of a particular structure into the definition that we would give the structure in every case. It doesn't seem like what we've done historically, nor what we ought to be doing. If there's disclaimer that says only an arc sheet that performs the following function, it's a whole different ball of wax, but I didn't see you making that argument. Well, what there is, is there's certainly disclosure that the arc sheets have to make the light uniform. But these lights... but the sheets make the light uniform in a very specific way. And in this case, the only way that they make the illuminating light uniform is by altering that pathway of light. That's really the point, is it's central to the invention. That's how the invention works. Well, that may be how the invention works, but that's not how it's claimed. I mean, that's what we're supposed to figure out is how it's claimed. And people can certainly claim broader than the disclosed embodiment. I mean, that happens all the time. So why would we limit them to only the exact way it operates in the disclosed embodiment? Well, in this case, once again, it's really just because it's central to the way the invention works. But we have all kinds of cases that say, if the patent specification says... do you know how many cases I've read that says, this is central to the investigation? Every embodiment herein should be construed as including. This is the critical feature of this invention. Language that denotes in the specification that all claims ought to be narrowly read in light of that criticality. And I don't see that here. Well, respectfully, Your Honor, the invention simply won't work without it. And in a lot of the cases... Well, none of these methodologies for improving the diffusion of the light would work if they didn't have some diffusing properties, correct? None of these sheets would work if they didn't alter the pathway of illuminating light. That is correct. Okay. So should we say that by definition, regardless of what your claims say, that every possible thing that alters the pathway of illuminating light reads on your patent? No, because our claim includes several limitations, of course. There have to be two structured arc sheets for altering the pathway of illuminating light. Each of those structured arc sheets have to be at the periphery of a light source. There has to be a reflective housing. But any form of such sheet that accomplishes those purposes would be within the claim. I think that's what Judge O'Malley was asking. Not if a broom would be within the limitation of the claim. Well, importantly, it's not just any sheet. The sheet has to contain an arc-like structure for altering the pathway of light. Well, you keep talking about the invention won't work. Will the invention not work if we adopt the interpretation by the commission? I mean, if we agree that in the shape of an arc is the correct interpretation, the invention works, right? Yes, Your Honor. I don't understand why you talk about the invention won't work. Yes, Your Honor. The invention will work under the commission's construction. Our contention is merely that it's overly narrow. So where in the specifications do you see a term, a phrase, arc-like? Or do you see anything that says an arc or something similar? I mean, you're telling us that we're supposed to take a very specified term and read it to be more vague and broader. So where in the spec do you see that? Well, arc-like simply means that it's shaped similarly to an arc. And every single embodiment disclosed in the 932 patent shows that. Additionally, during the prosecution history, when the examiner considered various prior art references, for example, the reference, the examiner stated that sheet four, which actually contains a series of arcs, was an arc sheet. Now that sheet contained a series of arcs, not just a single arc, but the examiner still referred to it as the arc sheet. That's one of the problems with the adopted construction, is under the adopted construction, the sheet has to be constructed in the shape of a single arc, not multiple arcs. Now this, in my reference, sheet four has multiple arcs. Not only did the examiner state that sheet is shaped in, not only did the examiner refer to that sheet as the arc sheet, but he also referred to sub-elements, 4-1 and 4-2 as sub-elements. Importantly, Amai itself states that each of those unit cells is defined by the union of a pair of two elliptical surfaces, or that a structured arc sheet can have more than one arc, and the commission's construction is directly at odds with that. It simply won't work. Now another point is that the commission's construction is incorrect because it relies on a disclaimer where none exists. To find a disclaimer, whatever else... Where in the commission's opinion do they use the word disclaimer? They state, in the commission's opinion, what it states is that it sort of teaches away. They might not use the exact word disclaimer, but they say that it teaches away from diffusion sheets containing arc-like structures. That's correct, isn't that correct? Is that correct? Does the specification say that? Well, what the specification says is the specification says that some diffusion sheets, some of which have microparticles, may decrease the light utility rate, which it simply describes as related to the absorption or the amount of light that will get through to the viewer. That's what I thought. I thought they were sort of disparaging diffusion sheets as a general proposition. Isn't that a fair characterization of what's happening in the spec? Well, the problem with that is... Yes or no? I mean, that was a question. Yes, Your Honor, but with the... Not conclusively, but a disparagement of diffusion sheets. Yes, Your Honor, but with the disclaimer. Yes, Your Honor, well, I... All I'm getting at is that Judge Moore asked you a very specific question. You said, well, there's a disclaimer. Yeah, we're in the patent field. These are magic words that have dramatic importance, right? Disclaimer is a great big word. And you said there's a disclaimer. And then when she pushed you a bit, you said, oh, no, it's teaching away. And then you tried to walk away from the teaching away. Is there a disclaimer? Yes or no? Your Honor, I don't believe there is. Okay, so you retract your statement that there was a disclaimer. Oh, no, I'm saying that I don't believe that there's disclaimer in the patent itself. I'm not stating that they... I'm not stating that... Did DITC, ALJ, and Commission find a disclaimer? That's what you say in your brief. I read it from that just now. Well, they made arguments, certainly, referring to disclaimer language. Well, there's a difference between finding an unequivocal disclaimer and looking at either the intrinsic evidence or the prosecution history and finding that there was a teaching away. There's a big difference. That's the point that Judge Clevenger was getting to. I understand that, Your Honor. And I can say, I don't have the direct quote in front of me, but I can certainly tell you that LG and the Commission have cited numerous cases related to disclaimer and disavowal. And I think here, the real problem... They may have cited cases. I mean, my goodness, the lawyers cite cases freely, sort of hoping that a decision maker will grab onto one of them. But this whole discussion started on the basis of you saying that the Commission found a disclaimer. And we're just pressing you on that. That's all. Certainly. And I understand, Your Honor. I think you've now said the Commission didn't find a disclaimer. I think they... There's no harm in saying I over-argued something and I take it back. I think the problem here is, Your Honor, that although the background in the specification criticizes those sheets, there are other teachings in the specification. For example, the specification itself shows that the materials of the sheet can be freely changed. Right. Well, now we're finally getting back to my question, which you never answered. So where in the written description is there anything that refers to the term arc-like or arc or similar? I mean, everything I read is talking about arcs, and they even talk about the preferred embodiment having a particular shape or within certain degrees. So where do you find in the written description something that says, well, it doesn't really have to be an arc? Your Honor, I would contend that there is really no difference between an arc and the term arc-like. We're not asserting that there is. Well, then why are you objecting to the claim construction? Because if there's no difference, then the claim construction should be fine, right? We're objecting to the claim construction for several reasons. First of all, as I mentioned, one of the key problems is that that construction requires that the entire sheet be shaped or constructed in the shape of a single arc. That's a problem, particularly given the intrinsic evidence, including the prosecution history. Well, Counsel, you're into your rebuttal time. Would you like to save the remainder? I would like to save the remainder of my time for rebuttal. Yes, Your Honor. Thank you. Ms. Valantine, are you going first? Good morning, Your Honors, and may it please the Court. The Commission correctly construed the claim limitation instruction arc sheet to mean a sheet constructed in the shape of an arc based on its plain and ordinary meaning in view of the intrinsic record. I think your friend on the other side, one of his best arguments is at least the examiner thought that a sheet that contained multiple arcs would be covered. Do you read this construction as excluding a sheet that contained multiple arcs? No, Your Honor. The problem is that, again, as you mentioned, they're trying to fit this arc-like concept into a flat sheet. But what the examiner actually said, and this is at 8024, he referenced first arc sheet 4 in rejecting original claim 8, which does not contradict the Commission's construction. The examiner noted that MI discloses arc sheet 4 when the curvature of diameter of the arc is longer than the diameter of the light source, too. Is the sheet entirely flat? No, Your Honor. You said flat sheet, so that's what I want to ask you. Is the sheet entirely flat? No, Your Honor. So what makes the sheet not flat? So what is being disclosed in MI is actually... What makes the sheet not flat means just flat, nothing arising above the surface. So if the sheet's not flat, what makes it not flat? Are there some little bubbles? In the MI reference, I'm sorry? No, they're not bubbles. They're actually multiple arcs put together into a single structure, but there is no limitation in the language of the claims on how these structured arc sheets maybe fit together. The point is that they are individual arcs that are arranged in a particular way in the MI reference. And that is what the examiner noted by then referring, in particular, and rejecting arc sheet, in particular, original claim 9, which claimed two arc sheets. He does not just to arc sheet 4. He refers to the individual arcs 4.1 and 4.2 as themselves being arc sheets. So you think the commission's construction is actually consistent with the examiner's view of the month? Yes, Your Honor. So again, there is no limitation in the claim for how the arcs are arranged. In fact, the specification of the 932 patent contemplates multiple arrangements. In some of the non-assertive claims, they can be at different angles. In the assertive claims, they can be in different planes. But again, the issue is not that it is a flat sheet containing some sort of microparticles, which was specifically considered to be the problematic prior arc in the specification. And rather, it is sheets constructed in the shape of an arc that may be arranged in different ways. Right. So it would be strange to read the commission's conclusion to say that it had to be just one arc because it finds that there was no infringement with respect to the or there was anticipation where there were two arcs in the same plane, right? Well, actually, the ALJ found that the YALREF has disclosed two arcs in different planes, Your Honor. Right. I'm sorry, in different planes, but still two arcs. Yes. So if we were to say the construction said it only had to be one arc, as your friend on the other side just seemed to say, that wouldn't be consistent with all the rest of the commission's findings. Correct, Your Honor. I think what they're trying to say is that a flat sheet containing micro features, micro disturbances, if you will, fits within the scope of the claim, and that is simply not the case. Can I make sure I understand this? Maybe I misread the opinion below entirely possible. I thought I understood them to say YAL has two layers that are joined together, which are, in fact, two arc sheets and can be treated as two arc sheets. I don't understand the commission below to concede that a single sheet with two arcs was an arc sheet and make that reference to YAL. I may be misremembering. You represent the commission. Tell me, what did they hold below? Because I'm with respect to the YAL reference, Your Honor. Yeah. So with the YAL reference, you have two individual arc sheets, the light reflecting layer and the light blocking layer that are basically on top of each other. And so you have two sheets. But each arc sheet in YAL is an arc sheet with a single arc. Correct. And it's not a problem of having a sheet that may have multiple individual arcs joined together, as in the Amai reference. The issue is that you still have individual arc structures, individual shapes that are arranged. You do not have a completely flat sheet with some sort of, with micro disturbances. This is the distinction. I'm confused. The IPC's construction is a sheet that is constructed in the shape of an arc. I don't see how that affords for a single sheet with multiple arcs. Well, so the claim actually calls for two structured arc sheets. Right. No, that's two sheets, each with one arc. What I don't understand is you seem to be just going completely off what I understood to be the ITC's construction. And so I must not understand it. So what I understood the ITC's construction to be is that a structure arc sheet is a sheet constructed in the shape of an arc, right? So it wouldn't be a sheet with lots of bumps, even if they're visual, not micro particle bumps or whatever. I understood it to be a single sheet that has an arc. That is the commission's construction, Your Honor. I think the issue is you're talking about how those individual arcs can be arranged with respect to another. And since it requires at least two, there can be more than two. No, more than two sheets. Each one is a single arc, correct? The figures that are shown actually in the patent actually have the two arcs attached to each other, correct? So I think the point that you're making is that two arcs can be attached. There can even be three or four attached, but each one is a separate sheet. So it's really multiple sheets. Correct, Your Honor. And again, the only requirement is that there be at least two. That would satisfy the claim. If there are more, there are more. And that's arguably what's shown in the But there are at least two. Correct, Your Honor. That's exactly our point. If we conclude that the claim construction is right, your opponent concedes that there's no infringement. Correct, Your Honor. And under Steiner-Kim, the court need not reach validity since that would affirm the commission's finding of no violation of Section 337. Okay. That was going to be my question. How did you know? I'm sorry? I said, no further questions for me. I will secede my last minute. Thank you. Good morning, Your Honors. The commission construed structured arc sheet in the singular, and if you look in the patent figures, as Judge O'Malley just pointed out, the patent figures show at figure 23, at figure 1, number 23, an arc sheet in the singular, and it discusses an arc sheet, and the claim requires two arc sheets. This is a plain meaning case. The words mean what they say. There's no need to read anything in structured arc sheet, sheet constructed in the shape of an arc. I, Eitri, admit structured arc sheet isn't a term of art. That's at 1996 and 3035, and no one says that they were their own lexicographer, so we're left with plain meaning. The intrinsic record supports that plain meaning. The claim specifies two structured arc sheets having different thickness or curvature. Eitri admits that thickness is a property of the sheet. That's at 1996, but curvature in the claim is treated just like thickness, so curvature is also a property of the sheet, not a property of some microscopic bump or imperfection within the sheet. Can a microscopic bump have a curvature? I don't know, your honor. I imagine everything has a curvature, and that's what I thought, that's what I thought, so just real tiny. In fact, tiny little, tiny little bumps. That's right, but that's a bump within the sheet. I can have a thickness, it's just measured in microns. That's within the sheet. I mean, if you could blow up, if you if you took a picture of this thing, it's so tiny that the eye can't see it, but we have these marvelous things that blow up in the picture. We would see that there's thickness associated with those little bumps, and we'd see there's curvature associated with those bumps. And in fact, that's what Eitri had to do to find anything on the accused flat sheet, which both parties admit are flat to the naked eye. Flat sheet with micron bumps. Right. Would your argument, is this your argument, am I understanding it right? Because I'm wondering as I'm listening to your response, is your argument that that would be a curvature of the micro bumps, but not a curvature of the arc sheet, which is what is discussed? Are you referring to what Judge Clevenger just discussed? Yeah, he was saying basically you've got a sheet with a lot of little micro bumps in it. It's got a curvature, each bump has a curvature, but I guess to me I'm thinking, but that curvature isn't the curvature of the sheet, it's the curvature of an individual bump within the sheet. That's exactly right. I thought that might be the argument you were making. Well, I mean, I asked you that question because you were going off on the ground that this little sheet, this so-called flat sheet, couldn't possibly have a thickness or a curvature. The flat sheet has a thickness and a curvature, but the specification doesn't talk about anything having to do with microparticle curvatures or microparticle bumps, and in fact, the only place that the specification even refers to microparticles is where it's talking about the prior art flat optical sheet that has microparticles and the problem with diffusion of light, which is precisely the problem that they were trying to overcome, and that's why they can't recapture that into their claim language. Do you agree, though, that there is no size limitation on the arcs as long as they are arc sheets? Yes, I do. Okay, so it's only the preferred embodiment that puts it between 30 and 170 or whatever it is. It's one of the embodiments, yes. But we can't look at this flat sheet as though it's an arc sheet, right? Correct. Why not? Because... Let's say somebody says in their manufacturing specification, if I please order a bunch of arc sheets, it's a sheet that has a bunch of arcs on it, and we've gone to a lot of care in this microtechnology to make certain knowledge of microscopic bumps have just the right amount of curvature and the right amount of thickness so they exist, and we call this an arc sheet. But the patent is clear that an arc sheet is a sheet constructed in the shape of an arc, not a flat sheet with a bunch of arcs on it. So where precisely does the patent say that? The patent refers everywhere in the intrinsic record, the patent refers to structured arc sheet 25 times. What I was hypothesizing was a manufacturer is making a structured arc sheet. It's flat and it's got arcs on it. It's just that it's real great science. Instead of this stuff that I could do with a pair of sheet metal and some bumps. And the patent specification doesn't consider that at all. Where does the patent specification say that's disqualified? It doesn't say it's disqualified, but it doesn't talk about any type of microparticle... I mean, ordinarily, a patentee gets the full scope of the claim. If you were on the other side, you'd be arguing, well, this is a nice broad claim. It includes any form of a structure that could be described as an arc sheet where somebody really sophisticated has put a bunch of bumps on it that are in the shape of arcs. Well, first of all, the patent... I don't see, you're not telling me anywhere, you've got some drawings, right? Your Honor, I think if you go back to the background and you look at the problem they were trying to solve, they specifically referred to these flat optical sheets with microparticles, which are the bumps within the sheet that you're referring to. And they said, this is a problem because the light is diffused and we have to figure out a way around it. And what we're going to do, we're going to bend the entire sheet like this. And that's how they solved the problem. Your Honor, if you have no more questions... If we agree with you on claim construction, that the ITC got it right, what is it that you would like to have us do? Just affirm that the judgment below was correct, non-infringement, invalidity, what is it you think we ought to rule upon? Your Honor, you can affirm no violation because the claim construction was correct and there's no evidence of infringement. You can affirm no violation of claim construction. Under SINR-CHEM, you do not have to address invalidity, but you can. But we need the finding of no violation. Has invalidity been briefed? Excuse me, Your Honor? Invalidity has been briefed, has it? Yes, sir, it has. Are there any other cases involving this patent that you're aware of? No, Your Honor, I'm not aware. Oh, there's the Chinese. There's a re-examination in China on the Chinese equivalent. And in Taiwan, the Taiwanese equivalent of this patent failed to issue. Okay, I think your time is up. Mr. Raffelson, you have some rebuttal time. Thank you, Your Honor. Thank you. Thank you, Your Honor. I just have a few quick points on rebuttal. First of all, the discussion of YOW really underscores the problem with the ITC's construction and the lack of a functional construction. The problem is, as was mentioned, YOW includes a single lamp reflecting cover that has two layers, 651 and 652. Layer 652 blocks or stops the pathway of light and does not alter its pathway. Additionally, even if our construction were not adopted, however, ITC contends that layer 652 does not improve the uniformity of the light in any case. That's because if we look at YOW, what YOW describes is YOW describes that underneath layer 652 is a reflecting layer, 651. YOW describes that the light bounces off the reflecting layer, bounces back down to reflective housing, and bounces up towards the viewer. That's why the functional limitation is crucial. I mean, you can see this is not a means plus function claim, right? So where in the claims does it discuss that functional? It just says for improving uniformity used in backlit modules comprising. So are you saying that in YOW it doesn't improve uniformity? No, I'm not saying that. I'm not saying that the structure as disclosed as a whole doesn't do that. What I am saying is that layer 652 doesn't do that, and there's no evidence that it does. That's the layer that just sits on top of the reflective layer, 651. The two layers taken together, right? The two layers taken together. Yes, Your Honor. The point is that only layer 651 is doing that. That's the point I'm trying to make. The other point is that we discussed thickness and curvature. Now, one point on thickness or curvature is during the rejection, during the single office action that issued during the prosecution history, the examiner stated that a my disclosed V-arc sheet 4, which is a sheet that contains multiple arcs, wherein a curvature diameter of V-arc is longer than the diameter of light source. The examiner was clearly referring to V-arc sheet 4 as the structured arc sheet, but on the other hand, when he was referring to curvature, he was only referring to the curvature of an arc within that multi-arc structure. That's another problem with the commission's construction.